STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-00-122

SHERRAN and TIMOTHY
THOMPSON,

Plaintiffs

v.

**JUDGMENT**

SCOTT A. MICHAUD and
THE STATE OF MAINE,
DEPARTMENT OF ATTORNEY
GENERAL,

DONALD L. GARBRECHT
LAW LIBRARY

JUL 18 2002

Defendants

This matter came on for hearing before the court on the complaint of plaintiff

Sherran Thompson for injuries caused by a motor vehicle accident and the claim of

her husband Timothy Thompson for loss of consortium. Due to scheduling and

witness problems, the nonjury trial was conducted in segments in January and June,

2002. The court has fully considered all of the testimonial and other evidence

presented during the trial sessions. In addition, the parties have stipulated that the

medical bills summarized in plaintiffs' exhibit 2 are fair and reasonable, though the

defendants contest whether all of the bills are causally related to the accident in

question. The court will consider the various elements of necessary proof below.

### Negligence

In order for the plaintiffs to prevail, they must first prove the defendants'

liability, which can be broken down into whether there was negligence and whether

1

any injuries were causally related to that negligence. The defendants have not contested and really cannot contest the negligence issue. On January 15, 1998, plaintiff Sherran Thompson was stopped in traffic near the east side rotary in Augusta, Maine. For whatever reason, defendant Michaud, who was following Mrs. Thompson, failed to stop in time and struck her pickup truck in the rear. Michaud had a duty to be aware of traffic and stop in time to avoid striking Mrs. Thompson. The court finds his failure to meet that duty was negligence. The court also finds that defendant Michaud was a detective in the Medicaid Fraud Detection Unit of the Department of the Attorney General at the time of the accident. The vehicle he was driving was a State-owned vehicle assigned to him, though apparently he was on his way to work at the time of the accident.

## Causation

The second element which the plaintiff must prove by a preponderance of the evidence is that the injuries of which she complains were causally related to the defendants' negligence. The evidence indicates that the impact and property damage done as the result of the accident were not serious. The defendants describe the incident as a "fender bender." Nevertheless, the court finds that the impact was sufficient to have caused at least mild whip lash injury to Mrs. Thompson's neck.

What surprises the defendants, and to some extent this court, is the extent of the variety of injuries claimed by the plaintiff and the extent of her medical treatments. The plaintiff's primary physical complaints as a result of the accident are vertigo, chronic pain, tingling and numbness in her arm and hand, and an

2

enlarged jugular vein. Reports from Dr. Doyle, who treated Mrs. Thompson shortly after the accident, diagnosed her medical condition as a neck strain which should resolve, but had no explanation for the tingling, numbness and vertigo. This began Mrs. Thompson's journey through a succession of specialists who likewise have been unable to fully explain her symptoms in light of negative evaluations, though there appears to be some agreement on a somewhat amorphus diagnosis of fibromyalgia.

Mrs. Thompson's post-accident medical condition is also made more complex by her pre-accident medical history. According to the medical records, that history goes back to the mid-1980's, shortly after she went on active duty in the United States Navy Reserve. Most notably, in 1986 Mrs. Thompson began complaining of numbness and tingling while on active duty in Hawaii. Attempts to isolate and explain the reason for these symptoms were not successful. In 1989, Mrs. Thompson was again complaining of numbness and tingling and by 1990 the Navy doctor was recommending a psychological evaluation with regard to these symptoms. In 1994, now a civilian Mrs. Thompson again treated for lightheadedness, numbness and tingling. In 1995, Mrs. Thompson again declined psychiatric or psychological counseling with regard to her conditions.

The court finds by a preponderance of the evidence that there is a causal relationship between the accident and negligence of July 15, 1998, and complains of symptoms consistent with a strained neck. The court also finds a causal relationship between the negligence and some but not all of other symptoms which are

consistent with medical conditions Mrs. Thompson had prior to the accident. The defendants have satisfied the court by a preponderance of the evidence that a portion of Mrs. Thompson's complaints are causally related to the pre-existing conditions, which the court has considered in its damage award.

The causal relationship between the accident and the enlarged vein in Mrs. Thompson's neck is also problematic. The enlargement was not noticed until approximately two years after the accident. Dr. Aslam testified, eventually, to his opinion that the accident probably had something to do with the enlarged vein, but that opinion seems to rest almost entirely on the history given by Mrs. Thompson at the time he saw her. This opinion was not strongly persuasive and there is no evidence of record that the enlarged vein is having or will have any effect upon Mrs. Thompson's health.

### Damages

Finally, the plaintiffs must prove their damages, also by a preponderance of the evidence. With regard to Mrs. Thompson, the court is satisfied that she has proved her entitlement to a substantial portion of her medical bills, her lost wages, and an award for pain and suffering. The court is also satisfied that Mr. Thompson has proved his entitlement to an award of damages for loss of consortium.

By far the largest portion of Mrs. Thompson's claim for damages is for the loss of her Naval Reserve drill pay. Her claim is that she was forced to retire from active reserve status in September of 2001 when she was found to be physically unfit for retention in the Reserves. The evidence indicates that the residual effects of the

4

accident of July, 1998 played a substantial part in the non-retention decision, though a review of Mrs. Thompson's extensive Navy medical record suggests that her back pain was not the only reason for the medical finding. The court can find some causal relationship between the accident and the forced retirement, but is not persuaded entirely by the calculation of the amount of that damage.

The plaintiffs presented the testimony of a retired Navy Reserve Captain on calculation of the drill pay she lost as a result of her forced retirement. The court does not quibble with the witness's calculations, but finds it difficult to accept one of his assumptions. The calculations were based on the assumption that Mrs. Thompson would remain an E5 and continue actively drilling with the Naval Reserve until her retirement age of 60. The court finds it implausible that Mrs. Thompson would have been allowed to continue her active drill status into her fifties. More important, evidence of mental health problems which occurred subsequent to the accident and Mrs. Thompson's retirement would make it unlikely that she would have maintained that status. In recent years Mrs. Thompson has been hospitalized three times for mental health issues including suicide attempts. Considering other evidence that Mrs. Thompson declined psychiatric or psychological counseling in 1995 because "the Navy might find out" and the evidence of these hospitalizations, it is a reasonable inference that Mrs. Thompson would not have continued drilling until the age of 60. The court will include some recognition of loss of drill pay in its award, but the plaintiff did not prove by a preponderance of the evidence her entitlement to the amount presented by her

5

expert witness.

## Judgment

In light of the foregoing, the entry will be:

(1)     Judgment for plaintiff Sherran Thompson in the amount of $48,000 plus costs and interest.

(2)     Judgment for plaintiff Timothy Thompson in the amount of $10,000 plus costs and interest.

Dated: June 20, 2002

_____
S. Kirk Studstrup
Justice, Superior Court

6

TIMOTHY THOMPSON  - PLAINTIFF
RR7, BOX 1595 TOGUS STREAM RD
AUGUSTA ME 04330
Attorney for: TIMOTHY THOMPSON
SUMNER LIPMAN
LIPMAN & KATZ PA
227 WATER STREET
PO BOX 1051
AUGUSTA ME 04332-1051

SHERRAN THOMPSON  - PLAINTIFF
RR7, BOX 1595 TOGUS STREAM RD
AUGUSTA ME 04330
Attorney for: SHERRAN THOMPSON
SUMNER LIPMAN
LIPMAN & KATZ PA
227 WATER STREET
PO BOX 1051
AUGUSTA ME 04332-1051


vs
SCOTT A MICHAUD  - DEFENDANT

Attorney for: SCOTT A MICHAUD
WILLIAM R FISHER
ATTORNEY GENERAL OFFICE OF AG
111 SEWALL STREET
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006

STATE OF MAINE - DEFENDANT
6 STATE HOUSE STATION
AUGUSTA ME 04333
Attorney for: STATE OF MAINE
AMY M SNEIRSON
MURRAY PLUMB & MURRAY
75 PEARL STREET
PO BOX 9785
PORTLAND ME 04104-5085

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-CV-2000-00122


DOCKET  RECORD

Filing Document: COMPLAINT                          Minor Case Type: AUTO NEGLIGENCE
Filing Date: 06/26/2001

## Docket Events:

10/17/2001 FILING DOCUMENT - COMPLAINT FILED ON 06/26/2001

10/17/2001 ATTORNEY - RETAINED ENTERED ON 06/26/2001
           Attorney:  SUMNER LIPMAN

10/17/2001 ATTORNEY - RETAINED ENTERED ON 06/26/2000
           Attorney:  SUMNER LIPMAN

10/17/2001 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 06/27/2000
           Attorney:  SUMNER LIPMAN